United States District Court
Southern District of Texas
**ENTERED**
December 19, 2022
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **MICHEL KECK,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:21-CV-00430** |
| | § | |
| **MIX CREATIVE LEARNING CENTER, LLC,** *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

## <u>MEMORANDUM & ORDER</u>

Plaintiff brings this action for copyright and trademark infringement. Now pending before the Court are Plaintiff's Motion for Summary Judgment (Doc. 50) and Defendants' Motion for Partial Summary Judgment (Doc. 51). In a December 14, 2022 hearing, the Court granted summary judgment for Defendants concerning enhanced statutory damages and granted summary judgment for Plaintiff concerning all affirmative defenses except for fair use and innocent infringement. The Court reserved judgment on the defenses of fair use and innocent infringement. For the reasons set forth below, the Court now **GRANTS** Defendants' Motion for Summary Judgment for Plaintiff's copyright and trademark claims and **DENIES** Plaintiff's Motion for these claims. Plaintiff's claims are dismissed in full.

### I.     BACKGROUND

Plaintiff is a mixed-media artist. She has had success pursuing projects for corporations. She has also made limited merchandise sales. (Doc. 50 at 2.) Among Keck's collections is her Dog Art series. Keck registered these works with the United States Copyright Office. To protect her

interests, Plaintiff also registered "Michel Keck" with the United States Patent and Trademark Office. *Id.* at 2-3.

Defendant Jacqueline Kenneally is the sole proprietor and owner of Mix Creative Learning Center, LLC ("Mix Creative"). Mix Creative is a local art studio which sells children's art lessons, painting kits, party bookings, and more. During the pandemic, Defendants began selling art kits online "so that the students could learn about media, styles and techniques that world-renowned and lesser-known artists use, as inspiration for the students to create their own works of art." (Docs. 50-1 at 48, 51; 51 at 12.) According to Defendants, "[t]he artist's biography and a sample of the artist's style of work was included in each kit to recognize the artist and to document and teach the particular art style, as well as recognize such works as part of historic scholarship, promote discussion and criticism, and to inspire each student to create their own masterpiece works." (Doc. 53 at 20.) The kits included slides "with publicly available images of the artist's works along with historical and biographical information about the artist from, for example, the artist's publicly available website." (Docs. 51-7 at 4; 57 at 6.) Defendants provided zoom art classes to accompany the kits. (Docs. 54 at 5; 57 at 7.) As part of these lessons, Defendant Kenneally described the artists and their techniques. (Doc. 54 at 5.) Several artists featured in the kits applauded and even reposted the children's work on their Instagram accounts. (Doc. 51-5.)

In November 2020, Keck learned that Mix Creatives was selling a product on its website titled "Michel Keck inspired dog masterpiece kit." (Doc. 50 at 3.) The kit consisted of pictures of six pieces of Plaintiff's art, biographical slides, and materials such as paint, paint brushes, and collage-style puzzle pieces "so that the students would have the necessary materials to create their own masterpieces in the form of mosaics and/or completely new artworks." (Docs. 51 at 15; 54 at

5.) Plaintiff alleges that the kits used unauthorized copies of her work copied off Google.[1] (Doc. 50 at 3.)

Defendants sold only six of these kits—including two sold to Plaintiff—for gross revenue of $240. Once Defendants received notice of the lawsuit, they removed all art kits from the website. *Id.* at 13.

Plaintiff brought copyright claims under the Copyright Act of the United States, 17 U.S.C. § 101 et seq. for actual or statutory damages, and false advertising and false designation of origin under the Lanham Trademark Act of 1946, 15 U.S.C. §1051, et seq. Currently pending before the Court are two dueling summary judgment motions. Plaintiff's Motion for Summary Judgment seeks judgment in her favor on copyright and trademark infringement, enhanced statutory damages for willfulness, and dismissal of Defendants' affirmative defenses. Defendants' Motion for Partial Summary Judgment seeks dismissal of Plaintiff's claims for copyright and trademark infringement and enhanced damages.[2] Defendants also seek leave to file a motion to recover fees and costs.

## II.      STANDARD OF REVIEW

Summary judgment under Rule 56 "is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[1] Users can do one of two things to copy an image from Google. They can right-click directly to copy or click on the image for a larger preview and then right-click to copy. In the latter, a small message warns that the picture might be copyrighted. (Doc. 55-1 at 4.) No such warning appears when users do not preview the larger image. According to Defendants, "[t]o the best of her recollection, [Kenneally], in her capacity as owner of Mix Creative, saw images of Michel Keck's paintings, including the works at issue, in the Google® search results, and then she right clicked on one of the publicly available images of the works at issue and selected 'copy image,' and then pasted and saved the image locally on the computer or into a document on the computer, and used the copy to create the works at issue included in the art kits." (Doc. 51 at 11.) Defendants do not recall any other copyright symbol. *Id.*

[2] While the parties' arguments primarily focused on Plaintiff's copyright claims, at the Court's December 14, 2022 hearing both expressed that their arguments also apply to Plaintiff's trademark claims.

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)). A genuine issue of material fact arises "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

The Court must draw all "reasonable inferences . . . in favor of the nonmoving party, but the nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (internal citation omitted). "[T]he movant bears the initial responsibility of demonstrating the absence of a genuine issue of material fact with respect to those issues on which the movant bears the burden of proof at trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995). "For any matter on which the non-movant would bear the burden of proof at trial, however, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Id.* at 718–19.

## III.   ANALYSIS

### A.  Prima Facie Case

Copyright infringement is a strict liability tort. A plaintiff need not prove a defendant's mental state to prosecute a copyright claim. *Fed'n of State Massage Therapy Bds. v. Mendez Master Training Ctr., Inc.*, 393 F. Supp. 3d 557, 573 (S.D. Tex. 2019). "To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Pubs., Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 361 (1991).

Plaintiff provides evidence to establish a prima facie case of infringement. First, she provides evidence of ownership of a valid copyright. A certificate of registration validly obtained from the Copyright Office within five years of the first publication of a work constitutes evidence of the originality of the work and the facts stated therein, including ownership. 17 U.S.C. § 410(c). It is undisputed that Keck registered her works with the Copyright Office within five years of their creation. Second, Plaintiff provides evidence that Defendants copied and distributed her work without her consent. It is undisputed that Defendants copied and pasted images of Plaintiff's work from the internet to documents. Defendants then sold art kits with these documents through their online store.

### B.  Fair Use Defense

Defendants plead an affirmative defense of fair use. "Fair use is a mixed question of law and fact." *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 560 (1985) "The fair-use doctrine balances the 'inherent tension' between copyright's interests in protecting author's works and permitting others to reference them in cultural conversation." *Bell v. Eagle Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 321 (5th Cir. 2022) (citing *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 575 (1994)). "Because the overarching goal of copyright is to stimulate intellectual activity for the public good, courts have long recognized a limited privilege . . . to use the copyrighted material in a reasonable manner . . . when rigid application of the copyright statute would stifle the very creativity it is meant to foster." *Bell*, 27 F.4th at 321 (internal citation and quotations omitted).

In assessing a fair use defense, courts look to four statutorily delineated factors:

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation

to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107. "All [factors] are to be explored, and the results weighed together, in light of the purposes of copyright." *Campbell*, 510 U.S. at 578. "A fair-use defense can succeed even if one or more factors favor the claimant[, and] Courts typically give particular attention to factors one and four (the purpose and market effect of the use)." *Bell*, 27 F.4th at 321. The Court considers each factor in turn.

### 1. Purpose of Use

The Court begins its inquiry by examining the purpose of Defendants' use of Plaintiff's art. In interpreting the "purpose and character" of the use, courts look at whether the use was for commercial purposes, whether the work was transformative, and whether Defendants acted in good faith. *Campbell*, 510 U.S. at 579; *Bell*, 27 F.4th at 322-23.

The first consideration is the commercial nature of the defendant's use. "The crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Harper & Row*, 471 U.S. at 562; *see also Sony Corp. of Am. v. Universal City Studios, Inc*., 464 U.S. 417, 451 (1984) ("[E]very commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright.") It is not disputed that Mix Creatives is a for-profit business selling products and lessons. Defendants sold the art kits for a profit.

A second consideration is whether the defendant altered or transformed the art into a different work.

The enquiry here may be guided by the examples given in the preamble to § 107, looking to whether the use is for criticism, or comment, or news reporting, and the like, see § 107. The central purpose of this investigation is to see, in Justice Story's words, whether the new work merely 'supersede[s] the objects' of the original

creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message.

*Campbell*, 510 U.S. at 578-79 (internal citations omitted). "[I]n determining whether a use is 'transformative,' we must go further and examine the copying's more specifically described 'purpose[s]' and 'character.'" *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183, 1203 (2021)

Parties provide competing authorities for the contention that the art was transformative. Defendants argue that they transformed the art in one of two ways—either as a teaching tool or as new artwork. While Defendants made no alterations to the works, they included the pictures in a kit with tools to allow students to create their own art. Defendants also prepared slides with biographical information on the artists. Defendants contend the kits were intended to "document and teach the particular art style, as well as recognize such works as part of historical scholarship." (Doc. 57-2 at 9.)

Plaintiff argues that Defendants' use was neither new nor educational. Plaintiff cites *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 992 F.3d 99 (2d Cir. 2021), which considers an artist's unlicensed use of artistic source material for a new work of art. However, unlike in *Warhol*, the "purpose" and "character" of Defendants' use of Plaintiff's material was not to create commercial visual art but to teach children about different artistic styles. Plaintiff also cites *Sadowski v. BackChina, LLC*, which found that a news agency's unlicensed use of a copyrighted photo was not educational. 2018 WL 3432044, at *2 (S.D. Tex. July 16, 2018) ("The picture is also not educational by itself. . . . While the picture complements the text, so would any picture of a car with snow around it. Nobility of the user's purpose does not widen the scope of fair use.")

In response, Defendants cite several authorities for the contention that the use of source material, accompanied by biographical information or other scholarship or lessons, transforms art into an educational tool. *See, e.g.*, *Marano v. Metropolitan Museum of Art*, 472 F.Supp.3d 76, 83

(S.D.N.Y. 2020) (distinguishing art used for artistic expression from art used for teaching and scholarship); *see also Monbo v. Nathan*, 2022 WL 4591905, at *20-21 (S.D.N.Y. August 26, 2012) (finding biographical use of work in documentary to be transformative).

The Court finds that Defendants' use aligns more closely with their authorities than with Plaintiff's. Defendants are not in the business of selling artistic reproductions and did not sell these kits as works of art themselves. Defendants did not include Keck's art in the kit for their inherent decorative value but to demonstrate a specific style of art. Lessons on the artist and artistic techniques accompanied the kits. Although the studies may not be as rigorous as that provided in a museum exhibit or university art history course, the kits nevertheless used Plaintiff's art to provide young students with instructions on how to create their own art and background information on a particular artist creating pieces in the relevant genre.

A third consideration is whether Defendants acted in good faith. While "[g]ood faith does not excuse infringement, . . . the propriety of the defendant's conduct does factor into 'the equitable balance of a fair use determination.'" *Bell*, 27 F.4th at 322. Evidence of good faith can include defendants' actions to remove the offending use and steps to ensure they do not repeat such a breach. *See id.* at 323 ("Once [the plaintiff informed the school he disapproved of their use] the school immediately removed the posts and responded that the incident was 'a teachable moment' it would be sure not to repeat.") Defendants provide evidence for a finding of good faith. As soon as Defendants received notice of Plaintiff's lawsuit, they removed all kits from their website. They had no warning before this of Plaintiff's—or any other artist's—displeasure.

In sum, while Defendants' actions were commercial, the evidence suggests that they acted in good faith. Further, Defendants drew on Plaintiff's art not for its inherent expressive value but

for what it, accompanied by materials and instruction in art theory and history, could teach students. The Court concludes that the first factor leans slightly in favor of Defendants.

## 2.   Nature of Copyrighted Work

In assessing the nature of the copyrighted work, courts may consider "among other things, whether the work was creative, imaginative, and original, . . . and whether it represented a substantial investment of time and labor made in anticipation of financial return." *Pro Arts, Inc. v. Hustler Magazine, Inc*., 787 F.2d 592 (6th Cir. 1986). Courts may further consider whether the work has been appropriated for its "expressive elements," rather than to disseminate "the underlying facts." *Bell*, 27 F.4th at 323. However, "[t]his factor is widely considered the least significant fair-use factor." *Id.* Plaintiff produced original and creative work. Defendants used it to demonstrate art styles. This factor weighs in favor of Plaintiff.

## 3.   Amount and Substantiality of Portions Used

Courts next look to the amount and substantiality of the artist's work used.

> [E]ven a small amount of copying may fall outside of the scope of fair use where the excerpt copied consists of the 'heart' of the original work's creative expression. On the other hand, copying a larger amount of material can fall within the scope of fair use where the material copied captures little of the material's creative expression or is central to a copier's valid purpose.

*Google LLC*, 141 S. Ct. at 1205. Like the previous factor, courts do not place significant weight on this element. *Bell*, 27 F.4th at 321 (noting that "[c]ourts typically give particular attention to factors one and four"). Defendants copied six complete pieces of art from the internet, weighing in favor of Plaintiff.

## 4.   Effect on the Marketplace

Finally, courts consider the effect of wrongful use on the marketplace. In assessing this factor, courts may look to "the amount of money that the copyright owner might lose," *Google LLC*, 141 S. Ct. at 1206, as well as, "more broadly, whether widespread use of the work in the

same infringing fashion 'would result in a substantially adverse impact on the potential market' for the original work and any derivatives." *Bell*, 27 F.4th at 324 (citing *Campbell*, 510 U.S. at 590). This factor is "undoubtedly the single most important element of fair use." *Harper & Row*, 471 U.S. at 566.

Plaintiff argues that Defendants' use "directly encroaches on Keck's ability to license her Trademarked name and copyrighted Works." (Doc. 50 at 19.) Specifically, she contends that her business relies on the commercialization of these works through merchandise sales. (Doc. 56 at 8.) Plaintiff urges the Court to consider not just Defendants' actual impact, but the impact that the "unrestricted and widespread conduct of the sort engaged in by the defendant . . . on the potential market for the original." (Doc. 50 at 19 (citing *Burnett v. Twentieth Century Fox Film Corp*, 491 F.Supp.2d 962, 971 (C.D. Cal.).)[3] Defendants counter that the scale, purpose, and type of use weigh against finding a harmful market effect. Defendants sold four kits to individuals other than Plaintiff, for a total of $160. They are not in the business of selling artwork or reproducing art. Instead, the kit included a piece of paper with copied images of Plaintiff's art as an example of a particular art style and inspiration for students learning about art. This is not the same as merchandizing Plaintiff's art.

Defendants' arguments are persuasive. It is hard for this Court to imagine how the use of Plaintiff's art for children's art lessons devalues her pieces' market worth. The widespread use of

---

[3] At the Court's December 14, 2022 hearing, Plaintiff provided the court with examples of what unrestricted conduct could look like—including the use of Plaintiff's art in textbooks or the creation of paint-by-numbers kits. But these examples are not the same as the present case, where Defendants sold art kits with model pictures accompanied by an art lesson. Conceptualizing a defendant's conduct too broadly would render any unauthorized as harmful to the market for an artist's work, calling into question the usefulness of this fourth factor.

Plaintiff's art for educational lessons would likely, if anything, increase her name recognition and commercial value. This factor weighs in favor of Defendants.

**IV.     CONCLUSION**

The Court concludes that the doctrine of fair use protected Defendants' conduct. Fair use is—as Plaintiff repeatedly emphasized—a narrow exception. But Defendants' conduct, with its educational intent and almost non-existent market impact, seems to be precisely the type of behavior this exception conceptualizes. Therefore, the Court **GRANTS** Defendants' Motion for Summary Judgment for Plaintiff's trademark and copyright infringement claims; and **DENIES** Plaintiff's Motion for Summary Judgment for these claims. Because Plaintiff's claims are dismissed, there is no need for the Court to reach the issue of innocent infringement.

Defendants also request leave to file a motion for fees and costs. The motion for leave to file is **GRANTED**. Defendants may file a motion for fees and costs by January 6, 2023. Plaintiff may respond by January 13, 2023.

**IT IS SO ORDERED**.

Signed at Houston, Texas on December 19, 2022.

Keith P. Ellison
United States District Judge