United States District Court
Southern District of Texas
**ENTERED**
March 27, 2023
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| MICHEL KECK, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:21-CV-00430 |
| | § | |
| MIX CREATIVE LEARNING CENTER, | § | |
| LLC, *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

### MEMORANDUM AND ORDER

Currently pending before the Court is Defendants' Motion for Fees and Costs (Doc. 61). For the reasons discussed below, Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART**.

### I.  INTRODUCTION

#### A.  Case Background

Plaintiff Michel Keck is a mixed media artist. She brought the present copyright and trademark infringement case against Defendants Mix Creative Learning Center, LLC and Jacqueline P. Kenneally—a children's art studio and the studio's owner, respectively. Defendants sold only six kits with Plaintiff's art—including two to Plaintiff—for a gross revenue of $240. Once Defendants received notice of the lawsuit, they removed all art kits from the website. Defendants offered to repay Plaintiff all profits, but Plaintiff proceeded with this lawsuit.

In December 2022, the Court granted Defendants' Motion for Summary Judgment and dismissed all claims. It found no evidence of willful infringement. (Dec. 14, 2022 Minute Entry.)

It also found that Defendants' use of Plaintiff's art fell into the fair use exception to copyright infringement because its use was as a teaching tool. (Doc. 60.)

### B.  Defendants' Motion for Fees and Costs

Defendants now move for costs and fees against Plaintiff under 17 U.S.C. § 505. They also move for costs and fees jointly and severally against Plaintiff and her counsel, Mathew Kidman Higbee, and the firm Higbee & Associates, pursuant to 28 U.S.C. § 1927, Federal Rule of Civil Procedure 26(g), and the Court's inherent authority. Defendants argue they are due fees based on, among other issues, the unreasonable assertion of willful infringement; Plaintiff's withdrawal from a settlement agreement; Plaintiff's continued disparagement of Defendants on social media; failure to produce responsive documents during discovery; and breach of agreements reached by counsel. (Doc. 61 at 10-19.) Defendants assert that these actions all amount to the vexatious and unreasonable multiplication of proceedings.

The Court first considers whether it should impose costs and fees against either Plaintiff or her attorney. The Court next considers the amount of fees and costs to be assessed.

## II. ELIGIBILITY FOR COSTS AND FEES

### A.  17 U.S.C. § 505

Defendants first seek attorneys' fees and costs against Plaintiff under 17 U.S.C. § 505. (Doc. 61 at 11.) The provision allows prevailing parties in copyright actions to fully recover costs and fees subject to a court's discretion:

> In any civil action under this title, the court may allow the recovery of full fees and costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505. Prevailing parties are treated equally for the purposes of fee recovery, regardless of whether they are pursuing or defending against copyright infringement claims. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994).

> Because copyright law ultimately serves the purpose of enriching the general public through access to creative works, it is peculiarly important that the boundaries of copyright law be demarcated as clearly as possible. To that end, defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement.

*Id.* at 527.

In pursuit of these goals, the Fifth Circuit encourages district courts to regularly award attorney fees to prevailing parties in copyright actions. While the award of fees remains discretionary, "an award of attorney's fees to the prevailing party in a copyright action is the rule rather than the exception and should be awarded routinely." *Hunn v. Dan Wilson Homes, Inc.*, 789 F.3d 573, 588–89 (5th Cir. 2015). "When the prevailing party is a defendant who receives no award, the presumption in favor of awarding fees in usually strong. This ensures that . . . the defendant does not abandon a meritorious defense in situations in which the cost of vindication exceeds the private benefit to the party." *Hacienda Recs., LP v. Ramos*, No. 2:14-CV-19, 2019 WL 93306, at *5 (S.D. Tex. Jan. 3, 2019) (internal citation and quotations omitted).

In determining whether to award attorneys' fees, the Supreme Court has held that "the most critical factor is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). In addition, a trial court may consider other factors, including the "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty*, 510 U.S. at 534 n.19; *see also Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 199-200 (2016) (instructing trial court to "give substantial weight to the objective reasonableness of the

losing party's position," but "also [to] give due consideration to all other circumstances relevant to granting fees," and concluding that the court "retains discretion, in light of those factors, to make an award even when the losing party advanced a reasonable claim or defense").

In the present case, Defendants prevailed on all claims, providing a presumption in favor of fees. Considering each *Fogerty* factor, the Court finds significant evidence of objective unreasonableness. It further finds that the awarding of fees would serve the considerations of compensation and deterrence. Faced with evidence of two *Fogerty* factors weighing in favor of the imposition of fees and no evidence of factors weighing against their imposition, it finds and holds that costs and fees under 17 U.S.C. § 505 would be proper in the present case. *See Geophysical Serv., Inc. v. TGS-NOPEC Geophysical Co*., No. CV H-14-1368, 2020 WL 821879, at *8 (S.D. Tex. Feb. 19, 2020) (grouping objective unreasonableness and frivolousness into a single inquiry and awarding fees where objective unreasonableness and compensation/deterrence factors weighed in favor, even without evidence of improper motive).

### 1. Frivolousness or Objective Unreasonableness

Defendants argue Plaintiff's claims were unreasonable because they were grossly disproportionate to the harms caused, Plaintiff refused reasonable offers to settle, and Plaintiff's willful infringement claims had no legal or factual support. (Doc. 61 at 18-19.) Plaintiff sought extensive damages for Defendants' $240 in sales. Further, Plaintiff's willful infringement claims were based on unsubstantiated allegations about copyright warnings in a Google Image search. Plaintiff never attempted to address the alleged misuse of her art before filing suit, and Defendant Kenneally removed the materials when she was notified of the suit.

Plaintiff now denies that she affirmatively sought up to $900,000 in statutory damages. (Doc. 65 at 11.) But Plaintiff's pleadings explicitly sought "statutory damages in an amount up to

$150,000.000 per work," for a combined total of up to $900,000 (Doc. 21 at 5.) Plaintiff further responds that the Court decided summary judgment narrowly and that the issue was nearly evenly split. (Doc. 60 at 5-11.) This argument addresses only affirmative defenses for infringement and not willful infringement. It also ignores the fact that the four elements considered in a good faith affirmative defense do not carry equal weight, and the Court held the two most important elements strongly favored Defendant.

Ultimately, the record suggests that Plaintiff's willful infringement claim was unreasonable.

## 2.  Motivation

"[A] party is improperly motivated where it asserts claims not because of [their] inherent merit, but rather because it seeks to knowingly gamble[ ] on an unreasonable legal theory in order to achieve a secondary gain," such as "the leveraging of a settlement." *Agence France Presse v. Morel*, No. 10-CV-2730, 2015 WL 13021413 at *5 (S.D.N.Y. Mar. 23, 2015) (internal quotations omitted). In *Baker v. Urban Outfitters, Inc.*, 431 F.Supp.2d 351, 357 (S.D.N.Y. 2006), for example, a federal district court found that a plaintiff had acted in bad faith because the defendant had stopped selling the allegedly infringing product as soon as the plaintiff complained; the defendant had sold few products; the plaintiff had rejected a settlement offer through which the plaintiff could have recouped all of the defendant's profits on the product; and a letter from the plaintiff's agent to the plaintiff's attorney produced in discovery revealed plaintiff intended to extract payment from individuals he perceived as having deep pockets.

Defendants argue that Plaintiff's unreasonable claim, unwillingness to settle, and negative commentary about Defendants on social media are evidence of bad faith. But, in contrast with *Baker*, they do not allege a specific improper motive. Further, none of Defendants' arguments

provides clear evidence of bad faith. Unreasonable claims are not themselves evidence of bad motive. *Randolph v. Dimension Films*, 634 F. Supp. 2d 779, 795 (S.D. Tex. 2009) ("The defendants have cited no case, and this court has located none, that infers an improper motive or bad faith simply because a plaintiff makes an objectively unreasonable infringement claim against deep-pocket defendants. Some evidence of bad faith must be shown."). Plaintiff's alleged social media posts, while attacks on Defendants, exhibit Plaintiff's belief that Defendants violated her rights rather than that Plaintiff had a motive of extortion. (Docs. 61-1; 70-1; 70-3.)

Plaintiff was open to settlement but withdrew after Defendants belatedly sought a non-disparagement clause. (Docs. 61-21; 61-23.) Plaintiff has a right to speak freely on social media. Should Defendants believe Plaintiff's comments rise to the level of defamation, they should pursue that claim separately. Ultimately, this factor does not weigh in favor of fees.

### 3. Compensation and Deterrence

Finally, the Court considers principles of compensation and deterrence. The compensation factor is "intended to promote the Copyright Act by ensuring that parties with limited resources could afford to prosecute or defend against opponents with plentiful resources." *Randolph*, 634 F. Supp. 2d at 796; *see also Fogerty*, 510 U.S. at 527 (discussing importance of demarcating boundaries of copyright law). Fees can also serve as a deterrent to further lawsuits pressing unreasonable claims:

> [T]he need for deterrence against objectively unreasonable copyright claims is significant. Just as attorney fee awards may chill litigation of close cases, preventing the clear demarcation of the boundaries of copyright law, the denial of such awards in objectively unreasonable cases also disserves the purposes of copyright law, by failing to protect the owners of valid copyrights from the cost of frivolous litigation. Furthermore, the denial of fees and costs to a prevailing defendant in an objectively unreasonable copyright case may spur additional frivolous lawsuits, of exactly the sort that an award of fees and costs is designed to "chill."

*Chivalry Film Prods. v. NBC Universal, Inc*., No. 05 CIV. 5627 (GEL), 2007 WL 4190793, at *3 (S.D.N.Y. Nov. 27, 2007)

Both compensation and deterrence principles weigh in favor of compensation. Regarding compensation, Defendants pursued a fair use affirmative defense to maintain the right to use art as an educational teaching tool. Concerning deterrence, the issues at stake in this case could and should have been addressed by parties before the Court ever got involved and before Defendants had to spend—according to their attorneys—over $100,000 in attorney fees to protect their rights. As soon as Defendants learned about the lawsuit, they removed all art kits from their website. They have been willing to compensate Plaintiff far beyond the $240 in earnings.

Therefore, the Court finds that this factor weighs in favor of granting fees.

Ultimately, provided with a clear prevailing party, evidence of unreasonableness on the part of Plaintiff, and principles of compensation and deterrence weighing in favor of the provision of fees, the Court concludes that it is appropriate to grant Defendants' request under 17 U.S.C. § 505.

### B.  28 U.S.C. § 1927 and Equitable Powers

#### 1.  Legal Standard

Defendants also seek costs and fees from Plaintiff's attorney and Plaintiff under 28 U.S.C. § 1927 and the court's equitable powers. 28 U.S.C. § 1927 reads:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

The purpose of § 1927 "is to deter frivolous litigation and abusive practices by attorneys and to ensure that those who create unnecessary costs also bear them." *Kapco Mfg. Co. v. C & O Enters.*,

*Inc.*, 886 F.2d 1485, 1491 (7th Cir. 1989) (internal citation omitted). Courts impose stringent requirements for the imposition of § 1927 sanctions:

> Because § 1927 sanctions are penal in nature, and in order not to dampen the legitimate zeal of an attorney in representing his client, § 1927 is strictly construed. Therefore, before imposing such sanctions, a court must ensure that, pursuant to the plain terms of § 1927, the offending attorney's multiplication of the proceedings was both "unreasonable" and "vexatious," evidence of recklessness, bad faith, or improper motive must be present.

*Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc.*, 38 F.3d 1414, 1416-17 (5th Cir. 1994) (internal citations omitted).

In the alternative, courts retain an inherent power to impose sanctions on unreasonable and vexatious parties. For the purposes of this case, there are two material differences between § 1927 and the court's inherent power to sanction. First, § 1927 permits awards only against attorneys "while an award made under the court's inherent power may be made against an attorney, a party, or both." *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999). Second, while sanctions under § 1927 are limited to parties' post-filing conduct (and not the existence of a lawsuit itself), "[t]he filing of a complaint may be sanctioned pursuant to . . . a court's inherent power." *See In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996).

### 2.   Analysis

Defendants pursue several arguments for the proposition that Plaintiff's counsel acted unreasonably and in bad faith.

Defendants' strongest argument is that Plaintiff's counsel pursued unreasonably inflated claims despite minimal sales of the kits and no evidence of willful infringement. (Doc. 61 at 17-20.) Defendants cite an employment discrimination case that found an attorney's "relentless pursuit of [a half-million-dollar economic damages claim] after the evidence demonstrated, at most a comparatively trivial amount of loss" amounted to evidence of bad faith and imposed § 1927

sanctions. *Alphonso v. Pitney Bowes, Inc.*, 356 F. Supp. 2d 442, 454 (D.N.J. 2005). Defendants also cite several cases imposing fees where counsel raised frivolous arguments and misrepresented facts. *See, e.g.*, *Greer v. Richardson Indep. Sch. Dist.*, 471 F. App'x 336, 340 (5th Cir. 2012) (misleading the court and raising baseless arguments); *see also In re Girardi*, 611 F.3d 1027, 1061-65 (9th Cir. 2010) ("misrepresenting facts," "making frivolous filings," and violating "§ 1927's duty to correct or withdraw litigation positions after it becomes obvious that they are meritless"); *Goodman v. Tatton Enter., Inc.*, No. 10-60624-CIV, 2012 WL 12540024, at *31 (S.D. Fla. June 1, 2012) ("[R]epeated instances of making misrepresentations to this Court vexatiously multiplied the proceedings and further demonstrate . . . objective and subjective bad faith.").

In this case, Plaintiff requested willful damages based on statutory provisions and not her own conjectures. These claims were unsupported—the only evidence she introduced for the proposition was a contention that, when downloading her pictures, Defendants would have seen a copyright warning. Defendants later demonstrated that other methods of downloading pictures would not have shown this warning. Nevertheless, as previously discussed, while the damages were disproportionate and the evidence weak, this alone does not amount to vexatiousness or bad faith. *Randolph*, 634 F. Supp. 2d at 795.

Defendants' second argument concerns their fair use defense. Defendants assert Plaintiff failed to produce critical documents for their fair use defense—particularly biographical slides allegedly included in the art kits. (Doc. 61 at 22-25.) *See Hacienda Recs.*, 2019 WL 93306 at *6 (failing to produce key requested documents is discovery abuse and unreasonably multiplies the proceedings). Defendants' counsel say they only discovered the existence of these documents when they spoke to their client. While this issue was not raised at summary judgment, Plaintiff now states no such information was ever included in her kit. (Doc. 65 at 14.) Because Defendants

were in a strong position to provide these documents to counsel without the need for discovery and because the underlying facts are disputed, the Court does not find this allegation indisputably demonstrates bad faith.

Defendants third assert that Plaintiff disparaged Defendants on social media, but do not include a legal analysis of this claim. (Docs. 61 at 21-22; 66-1 at 5.) As discussed above, while Plaintiff's statements suggest anger, they are insufficient to clearly demonstrate bad faith.

Defendants cite several other facts to support their claim of bad faith, including other incidents of sanctions against Plaintiff's counsel, unreasonable delay in litigation, failure to produce requested copyright documents, and breach of a scheduling order. (Doc. 65 at 17-22.) The Court finds none of these arguments constitutes sufficient evidence for recklessness, bad faith, or improper motive when viewed either in isolation or in sum. The Court concludes that the actions of Plaintiff's counsel are insufficient to meet the stringent standards of § 1927 or under the Court's equitable powers.

### C.  Rule 26

Finally, Defendants seek fees and costs against counsel under Rule 26. Rule 26(g) requires attorneys to sign each disclosure and discovery request, response, and objection. Attorneys must certify that each request, response, or objection is warranted, not interposed for any improper purpose, and not unduly burdensome.

> If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

Rule 26(g)(3). Imposition of sanctions for a violation of this rule is mandatory. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 33 (1991).

As discussed briefly above, Defendants' discovery-related allegations—that Plaintiff refused to produce requested documents and withheld other key documents—do not clearly rise to the level of sanctions. Of course, an attorney and their client are free to make their own arrangement as to who should pay for fees and expenses. The attorney and client are far better positioned that the Court to allocate responsibility and financial liability.

## III. CALCULATING FEES AND COSTS

Having determined fee-shifting is reasonable, the Court now employs a two-part process to calculate fees. First, the Court uses the lodestar method to determine the amount due. *Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). The lodestar is determined by multiplying the hours spent by an hourly rate. *Hacienda Recs.*, 2019 WL 93306, at *3. Second, the Court can adjust the amount due up or down based on an analysis of twelve factors. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). These factors include time, labor, novelty and skill, customary fees, results, experience of attorneys, and awards in similar cases. *Id.* at 717-19.

### A. Calculating Fees

Defendants seek a lodestar amount of $128,005 consisting of an hourly rate of $500, with a 30% upward adjustment for a total of $166,406.50. (Docs. 61 at 29-31; 66 at 8, 11.) These requests do not include fees for preparing for hearings on the pending motion. In the Court's March 20, 2023 hearing, Defendants expressed a willingness to accept a 20% deduction. Plaintiff contests several fees, including fees she argues are inflated or duplicative and paralegal fees. (Doc. 65 at 16-18.) In total, she seeks a reduction of $17,925 from the original request. *Id.* at 18.

Defendants' $500 hourly rate is reasonable for shareholders at a large national law firm. *See Geophysical Serv., Inc.*, 2020 WL 821879, at *35 (finding $500-600 per hour for partners

reasonable); *Adhikari v. Daoud & Partners*, No. 4:09-CV-1237, 2017 WL 5904782, at *14 (S.D. Tex. Nov. 30, 2017) (finding $700-900 rates reasonable). Defendants' 20% deduction sufficiently covers Plaintiff's contested fees. This case did not require significant discovery or witness deposition, nor did it cover multiple complex issues that may necessitate granting an upward variance. Accordingly, the Court finds that $102,404 in fees—a 20% reduction of Defendants' request—may be imposed on Plaintiff.

### B. Calculating Costs

Defendants also seek $3,543.72 in costs. (Doc. 61 at 32.) 17 U.S.C. § 505 limits costs to those codified at 28 U.S.C. §§ 1821 and 1920. *Rimini St., Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873, 874 (2019). These costs are for per diem and mileage, as well as fees of the clerk, fees for transcripts, fees for printing and witnesses, fees for research costs and copies, docket fees, and expert compensation. Plaintiff seeks to strike nearly all costs based on these constraints. (Doc. 65 at 24.) The Court agrees that several sought costs should be eliminated, including Defendants' legal research costs, courier fees, and unexplained "Other Charges." *See, e.g.*, *United States ex rel. Gudur v. Deloitte Consulting LLP*, H-00-1169, 2007 WL 9821302, at *2-4 (S.D. Tex. May 14, 2007) (concluding that, while some circuits allow as attorney fees, "computer-assisted legal research is not recoverable [as a cost] under 28 U.S.C. § 1920. Legal research, whether conducted on a computer or in a library, is not a cost enumerated under 28 U.S.C. § 1920"); *Wright v. Blythe–Nelson*, No. 3:99CV2522, 2004 WL 2870082, at *10 (N.D. Tex. Dec. 13, 2004) (disallowing a "claim for long distance charges, courier fees, facsimile charges, legal research and postage because these types of costs are not recoverable under § 1920"). However, the Court concludes Defendants provided sufficient information on reproduction costs to warrant their inclusion. (Doc.

61-3.) *See Fogleman v. ARAMCO*, 920 F.2d 278, 286 (5th Cir. 1991) ("[W]e do require some demonstration that reproduction costs necessarily result from that litigation.").

Subtracting the listed costs above, Defendants are owed $165.72 in costs.

## IV. CONCLUSION

Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART**. Under 17 U.S.C. § 505, Plaintiff shall pay Defendants $102,404 in attorney fees and $165.72 in costs, for a total of $102,569.72. Defendants' Motion to hold Plaintiff's attorneys jointly and severally liable under 28 U.S.C. § 1927 and Rule 26 is **DENIED**.

Signed at Houston, Texas on March 27, 2023.

Keith P. Ellison
United States District Judge